IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-00653-RBJ

MANUEL B. MENDIOLA,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

ORDER

---

This matter is before the Court on review of the Social Security Administration (SSA) Commissioner's decision denying claimant Manuel B. Mendiola's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision.

    **I.**    **Standard of Review.**

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other

evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## II. Background.

Mr. Mendiola is 51 years old. *See* R. 230. He has a high school education and has worked a variety of jobs in his life, including as a nurse's aide, painter, cashier, lime kiln operator, cleanup worker, cook, and, most recently, bartender. R. 280, 295–96.

In August 2008 Mr. Mendiola suffered a heart attack and had quintuple bypass surgery. R. 379, 394. He has experienced intermittent chest pain and related symptoms since the surgery. *See, e.g.*, R. 429, 616, 657, 1155. In addition, he has diabetes and endures occasional abdominal pain, low back pain, and difficulty breathing. *See, e.g.*, R. 440, 690, 1116, 1170.

Mr. Mendiola is also an alcoholic. R. 396. On average he binge-drinks a twelve-pack of beer and a pint of liquor once or twice a week. R. 44–45. He appears to use alcohol to treat his chronic mild depression. R. 396–97. Unfortunately, Mr. Mendiola's alcohol use has aggravated many of his other health problems. He has not complied with the medication regimen for his heart condition because he has been spending his copay money on alcohol. *See* R. 431, 469, 657, 1154–55, 1157–59. His alcohol use exacerbates his diabetes. R. 397. And his high alcohol intake is a risk factor for his abdominal issues. R. 1146.

### A. Procedural History.

On September 21, 2012 Mr. Mendiola applied for supplemental security income benefits. R. 276. On November 1, 2012 he applied for disability insurance benefits. R. 230. Both claims alleged disability beginning August 19, 2011. R. 234, 241. The claims were initially denied on April 8, 2013. R. 140. Mr. Mendiola requested reconsideration and the claims were again denied on June 11, 2013. R. 155–56. Mr. Mendiola then requested a hearing, which was held in front of Administrative Law Judge (ALJ) Stanley R. Hogg on August 13, 2014. R. 30. At the hearing Mr. Mendiola asked to amend his alleged onset date to be five days later than originally averred, moving that date to August 24, 2011. R. 35. The ALJ issued a decision denying benefits on October 23, 2014. R. 11. The Appeals Council denied Mr. Mendiola's request for review on February 10, 2016, rendering the ALJ's determination the final decision of the Commissioner for purposes of judicial review. R. 1. Mr. Mendiola filed a timely appeal in this Court. ECF No. 1.

### B. The ALJ's Decision.

The ALJ issued an unfavorable decision after evaluating the evidence according to the SSA's standard five-step process. R. 11–22. First, he found that Mr. Mendiola had not engaged in substantial gainful activity since his alleged onset date of August 24, 2011. R. 13. At step two, the ALJ found that Mr. Mendiola had the severe impairments of coronary artery disease, hypertension, pancreatitis, asthma, chronic obstructive pulmonary disease, diabetes mellitus, and degenerative disc disease. R. 14. The ALJ found Mr. Mendiola's mental impairments of depression and alcohol abuse to be nonsevere. *Id.* At step three, the ALJ concluded that Mr. Mendiola did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 17.

The ALJ then found that Mr. Mendiola retained the residual functional capacity (RFC) to perform unskilled and low semi-skilled light work provided he is only occasionally required to climb stairs, balance, stoop, kneel, crouch, or crawl and he avoids environments that are very hot, very cold, or involve continuous exposure to dust, smoke, fumes, pollutants, or chemicals. R. 16.  The ALJ determined that Mr. Mendiola is capable of performing his past relevant work at step four.  R. 22.  Therefore, the ALJ concluded that Mr. Mendiola was not disabled.  *Id.*

### III.  Discussion.

Mr. Mendiola contends that the ALJ erred at steps three and four by: (1) failing to obtain an updated expert opinion on whether his conditions were medically equivalent to a listed impairment; (2) overlooking his treating source's medical opinion about his standing and walking limitations; and (3) basing his credibility assessment on the wrong legal standard and insubstantial evidence.  The Court will discuss each argument in turn.

#### A. Medical Equivalence.

Mr. Mendiola argues that the ALJ should have had a medical expert offer an updated opinion on whether his cardiac condition was medically equivalent to a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Although the ALJ is responsible for making the legal determination of whether a listing is met or equaled, SSA policy requires the ALJ to receive into the record a physician or psychologist's opinion on the question of medical equivalence.  Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  This requirement can be satisfied by the signature of a State agency medical or psychological consultant on an SSA-831-

U5 (Disability Determination and Transmittal Form). *Id.* The record in this case contains four such forms, two dated April 8, 2013 and two dated June 11, 2013. R. 73–74, 103–04. Still, the ALJ must obtain an updated medical opinion if he believes that evidence submitted later on may change these medical consultants' findings. SSR 96-6p, 1996 WL 374180, at *3–4. Mr. Mendiola asserts that medical records submitted after June 11, 2013 revealed these four opinions were no longer supported by substantial evidence, warranting an updated expert opinion. I disagree.

The ALJ did not abuse his discretion in declining to seek an updated opinion on medical equivalence. As an initial matter, "[a]dopting [Mr. Mendiola's] logic would ultimately require an ALJ to include an updated medical expert opinion in evidence any time the record is supplemented, effectively contravening the discretion given to the ALJ under SSR 96-6p." *Shreve v. Colvin*, No. 13-CV-00286-RBJ, 2014 WL 701507, at *6 (D. Colo. Feb. 24, 2014).

Second, substantial evidence supports the ALJ's decision not to seek an updated opinion because the documents submitted after June 11, 2013 were unlikely to change the medical experts' views. For example, the ALJ wrote that the evidence of record does not show that Mr. Mendiola's coronary heart disease has caused very serious limitations in his activities of daily living, undermining his case for meeting Listing 4.04(C) (ischemic heart disease). R. 15. The same is true of Listing 4.02 (chronic heart failure). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.02(B). Yet Mr. Mendiola points only to treatment notes showing his ejection fraction declining from roughly 50% to 37%, which still exceeds the 30% ejection fraction needed to meet Listing 4.02. *See id.* § 4.02(A); ECF No. 14 at 19–21. He does not claim that this change seriously impaired his activities of daily living or that his other ailments—such as chronic mild

depression—are at least of equal medical significance to this criterion. *See* ECF No. 14 at 19–21.

Similarly, the evidence of Mr. Mendiola's psychological condition has not materially changed since June 11, 2013. The medical experts considered a consultative psychological examiner's view that Mr. Mendiola was an alcoholic and would "likely experience severe psychological problems" if he stopped drinking. *See* R. 76–77, 90–91, 107–08, 122–23; *see also* 396–97 (consultative psychological examiner's opinion). These experts concluded that Mr. Mendiola's psychological problems do not meet or equal an affective disorder because they cause only a mild restriction in his activities of daily living; mild difficulties in social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. R. 82, 96, 113, 128. In contrast, Listing 12.04 (depressive, bipolar, and related disorders) requires, among other things, either an extreme limitation in one of those areas or marked limitations in two of those areas. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B).

Mr. Mendiola says that he might now meet or equal Listing 12.04 because Dr. Nienaber prescribed him an antidepressant and admonished him to stop spending money on alcohol when he cannot afford his medication.[1] But while the prescription of antidepressants may confirm a diagnosis of depression, "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). Mr. Mendiola needed to demonstrate not just that he was prescribed medication, but "that his impairments would have

---

[1] Mr. Mendiola also cites his testimony at the hearing before the ALJ, but this testimony is not "medical evidence" that could trigger the ALJ's duty to obtain an updated medical opinion under SSR 96-6p. *See, e.g.*, 20 C.F.R. § 404.1512(b)(1)(i)–(ii).

more than a minimal effect on his ability to do basic work activities." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). And, contrary to Mr. Mendiola's position, there is no reason to think that a medical expert may have viewed Mr. Mendiola's noncompliance with his medication as equaling either an extreme limitation in his ability to perform daily activities, his social functioning, or his maintenance of concentration, persistence, or pace, or a marked limitation in two of those functional areas.

### B. Dr. Nienaber's Opinion.

Next, Mr. Mendiola argues that the ALJ erred by not giving Dr. William Nienaber's opinion controlling weight, or at least by not explaining why his opinion was not adopted in full. Dr. Nienaber was Mr. Mendiola's treating cardiologist. R. 19. Under SSA regulations, a treating source's medical opinion is entitled to controlling weight if it is well supported and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When such an opinion does not warrant controlling weight, the ALJ must give good reasons for the weight given to the opinion. *Id.* Mr. Mendiola contends that, under either standard, the ALJ's RFC determination erroneously omitted Dr. Nienaber's views about Mr. Mendiola's standing and walking limitations. I agree.

The ALJ failed to "first determine whether [Dr. Nienaber's] opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Indeed, the ALJ found that "Dr. Nienaber's opinion . . . is supported by his treatment notes" and did not cite any contradictory evidence. *See* R. 20. Had the ALJ considered whether Dr. Nienaber's opinion is entitled to controlling weight, he apparently should have found that it was. Remand is

therefore appropriate for the ALJ to conduct the required sequential analysis of the weight due to Dr. Nienaber's opinion. *See Watkins*, 350 F.3d at 1300.

Moreover, even if the ALJ can justify giving Dr. Nienaber's opinion only "great weight," the ALJ's current handling of Mr. Mendiola's standing and walking limitations is flawed. Dr. Nienaber gave his opinion by filling out a Wyoming Department of Workforce Services form. R. 1112. The form calls for a doctor to circle the maximum number of hours in an eight-hour workday that a claimant can sit, stand, or walk. R. 1113. Dr. Nienaber indicated that Mr. Mendiola can stand for up to one hour at a time for a total of four hours per day, and that he can walk for up to one hour at a time for a total of three hours per day. *Id.* The ALJ did not include these limitations in his RFC finding. *See* R. 16. According to the Commissioner, however, the limitation to light work encompassed these restrictions because such work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," SSR 83-10, 1983 WL 31251, at *6, and the ALJ took Dr. Nienaber's opinion to mean Mr. Mendiola "could stand four hours *and* walk three hours" for a total of seven hours a day, ECF No. 15 at 14.

The ALJ's interpretation of Dr. Nienaber's opinion is unreasonable. The Wyoming Department of Workforce Services form is not a model of clarity, instructing a physician simply to "[c]ircle full capacity for each activity." R. 1112. That is easy enough for a claimant's capacity for sitting, which is completely independent from the ability to stand or walk. But the same cannot be said of standing or walking.

Both standing and walking involve "being on one's feet." SSR 83-10, 1983 WL 31251, at *6. Standing means "[r]emaining on one's feet in an upright position at a work station without moving about," while walking means "[m]oving about on foot." U.S. Dep't of Labor, *Selected*

8

*Characteristics of Occupations Defined in the Dictionary of Occupational Titles* app. C (1993). For this reason, the SSA usually describes a claimant's capacities for standing and walking as a single ability. *See, e.g.*, 20 C.F.R. §§ 404.1567(a), 416.967(a) ("Jobs are sedentary if walking and standing are required occasionally . . . ."); SSR 83-10, 1983 WL 31251, at *6 ("[L]ight work requires standing or walking, off and on . . . ."); R. 83, 97, 115, 130 (using a Disability Determination Explanation form that asks how long Mr. Mendiola can "[s]tand and/or walk"). So when these capacities are presented separately, as on Wyoming's form, the estimates must be understood as competing demands on an individual's overall ability to work on his or her feet.

  The only viable reading of Dr. Nienaber's opinion is that Mr. Mendiola can stand for four hours *or* walk for three hours a day—at most three to four hours of combined walking and standing in an eight-hour workday. The Commissioner's interpretation would instead nonsensically keep Mr. Mendiola on his feet after four hours of standing if he moved about instead of staying in one spot. It goes without saying that there is nothing in the record to support this view. On the contrary, Dr. Nienaber's treatment notes observed a diminished pulse in Mr. Mendiola's feet and legs in general. *See* R. 1155, 1164; *see also* R. Dean Hill & Robert B. Smith, III, *Examination of the Extremities: Pulses, Bruits, and Phlebitis*, in Clinical Methods: *The History, Physical, and Laboratory Examinations* (H. Kenneth Walker et al. eds., 1990), https://www.ncbi.nlm.nih.gov/books/NBK350/ ("2 + suggest[s] a slightly more diminished pulse than normal"). Physical activity, like walking, can trigger Mr. Mendiola's cardiovascular symptoms, reducing the amount of time he can spend on his feet. *See, e.g.*, R. 429. Thus, there are not "two fairly conflicting views" here. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007).   The ALJ's mistaken understanding of Dr. Nienaber's opinion must be corrected on remand.

On a related note, the ALJ's RFC determination also fails to account for Dr. Nienaber's opinion about how long Mr. Mendiola can stand or walk at one time.  The ALJ's decision recites Dr. Nienaber's view that Mr. Mendiola can stand or walk for only one hour at a time,[2] but does not say whether the ALJ accepted or rejected that opinion.  *See* R. 19–20.  Instead, the decision later notes that Mr. Mendiola told a consultative physician he can stand for about two hours at a time on "good days" and only forty-five minutes at a time on "bad days," and declares that these statements are "more or less consistent with his hearing testimony" that he can stand for "[m]aybe an hour" and "sometimes [has] to use a cane."  R. 20, 47–48.  The decision then concludes that "normal breaks" (i.e., at approximately two-hour intervals) would accommodate Mr. Mendiola's limitations "in terms of what the claimant said he can do on good days and as far as what is supported by the objective medical evidence in the record."  R. 20; *see also* SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996) (describing normal breaks in the morning, at lunchtime, and in the afternoon as occurring at roughly two-hour intervals).  This is the entirety of the ALJ's analysis; he does not cite to specific "objective medical evidence in the record." *See* R. 20.

On remand the ALJ must adopt Dr. Nienaber's opinion about Mr. Mendiola's continuous standing and walking limitations if this opinion is well supported and consistent with the record, or else the ALJ must identify substantial evidence in the record that overcomes Dr. Nienaber's

---

[2] I say stand *or* walk because, following the above analysis, that is the proper interpretation of Dr. Nienaber's opinion.

opinion, Mr. Mendiola's testimony, and Mr. Mendiola's statements to the consultative physician about his "bad days."

### C. Credibility Assessment.

Finally, Mr. Mendiola argues that the ALJ's credibility assessment applies the wrong legal standard and is not based on substantial evidence. Following SSR 96-7p, the ALJ evaluated the credibility of Mr. Mendiola's statements about the intensity, persistence, and limiting effects of his symptoms. *See* R. 18–22. The ALJ found Mr. Mendiola's statements not fully credible based on his "significant" activities of daily living, attempts to get a job, successful medical treatment, and inconsistent remarks compared with other evidence of record. *See id.*

Mr. Mendiola concedes that SSR 96-7p was in effect when the ALJ issued his decision. However, he argues that the Commissioner and her lawyers are instead bound by the March 2016 ruling in SSR 16-3p, which superseded SSR 96-7p while his case was pending before this Court. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996), *superseded by* SSR 16-3p, 2016 WL 1119029 (Mar. 28, 2016); *see also* 20 C.F.R. § 402.35(b) ("[Social Security Rulings] are binding on *all components* of the Social Security Administration.") (emphasis added).

The ALJ did not apply the wrong legal standard. It is true that the Tenth Circuit has not squarely addressed whether SSR 16-3p applies to decisions issued before March 2016, and district courts have reached conflicting conclusions. *Compare Christensen v. Colvin*, No. 15-09856-EFM, 2016 WL 6648682, at *5 n.38 (D. Kan. Nov. 10, 2016) (applying SSR 96-7p), *with Abad v. Colvin*, No. 16-CV-0700-WJM, 2017 WL 57259, at *8 (D. Colo. Jan. 5, 2017) (applying SSR 16-3p), *and Piper v. Colvin*, No. 16-CV-0382-WJM, 2016 WL 7383402, at *6 (D. Colo. Dec. 21, 2016) (same). But in two unpublished decisions, the Tenth Circuit recognized that SSR

96-7p had been rescinded during the pendency of judicial proceedings and chose to apply it anyway. *See Paulsen v. Colvin*, No. 15-1277, 2016 WL 6440368, at *1 (10th Cir. Nov. 1, 2016) (unpublished); *Shelton v. Colvin*, No. 15-6220, 2016 WL 6087652, at *4 (10th Cir. Oct. 18, 2016) (unpublished).  Moreover, this Court's role in reviewing the Commissioner's decision is to determine, among other things, whether the ALJ "*applied* the correct legal standards." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (emphasis added).  This inquiry requires the Court to gauge the ALJ's compliance with the legal standards that existed at the time of his decision, whether or not these standards have subsequently changed.

However, because the ALJ's reconsideration of Mr. Mendiola's standing and walking limitations may change his view of Mr. Mendiola's credibility, the Court will not review whether the current credibility assessment is also supported by substantial evidence.  *Cf. Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## ORDER

For the reasons described above, the Court REVERSES and REMANDS the Commissioner's decision denying claimant Manuel B. Mendiola's application for disability insurance benefits and supplemental security income.

DATED this 30th day of January, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge